UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 JUN -8  PM 12: 09

CLERK

BY_____
DEPUTY CLERK

BRIAN T.,                              )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )        Case No. 2:21-cv-00087
                                       )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
          Defendant.                   )

**OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE**
**COMMISSIONER, DENYING THE COMMISSIONER'S MOTION TO AFFIRM,**
**AND REMANDING FOR FURTHER PROCEEDINGS**
(Docs. 13 & 14)

Plaintiff Brian Tirrell ("Plaintiff") is a claimant for Social Security Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under

the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to

reverse the decision of the Social Security Commissioner (the "Commissioner") that he is

not disabled.[1] (Doc. 13.) The Commissioner moves to affirm. (Doc. 14.) Plaintiff replied

on December 20, 2021, and the Commissioner filed a sur-reply on January 3, 2022, at

which time the court took the pending motions under advisement.[2]

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of
any medically determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not less than
[twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or
mental impairment or impairments" must be "of such severity" that the claimant is not only
unable to do any previous work but cannot, considering the claimant's age, education, and work
experience, engage in any other kind of substantial gainful work which exists in the national
economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[2] As Plaintiff "raise[d] new issues or arguments in [his] reply memorandum," the
Commissioner's sur-reply addressing those issues was proper, but Plaintiff's additional reply to
the Commissioner's sur-reply (Doc. 18), which he filed without leave, was improper under this
court's Local Rules. L.R.P. 9(a)(5).

After his applications for DIB and SSI were denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Dory Sutker found Plaintiff ineligible for benefits based on her conclusion that he can perform jobs that exist in significant numbers in the national economy and was therefore not disabled.

Plaintiff identifies four errors in the disability determination: (1) the ALJ and Appeals Council erred in failing to consider evidence of a stroke Plaintiff suffered after his hearing but before issuance of the ALJ's decision; (2) the ALJ improperly substituted her own opinion for that of the psychological experts; (3) the ALJ improperly identified three jobs at the light exertional level without first obtaining the Vocational Expert's ("VE") opinion; and (4) the ALJ's appointment was invalid under the United States Constitution. Plaintiff seeks a remand of his claims for a new administrative hearing.

Plaintiff is represented by Alexandra M. Jackson, Esq. Special Assistant United States Attorney Molly E. Carter represents the Commissioner.

## I.    Procedural History.

Plaintiff filed his initial applications for DIB and SSI on May 26, 2019, alleging a disability onset date of January 21, 2019. In his application, he alleged the following disabling conditions: spondylosis, spondylolisthesis, depression, anxiety, post-traumatic stress disorder, and myocardial infarction. His claims were denied on July 15, 2019 and were denied upon reconsideration on September 27, 2019. Plaintiff filed a request for a hearing, which was held before ALJ Sutker via telephone on July 23, 2020. Plaintiff appeared and was represented by counsel. VE Michelle Bishop also appeared and testified at the hearing.

On August 28, 2020, ALJ Sutker issued an unfavorable decision, which Plaintiff timely appealed. The Appeals Council denied review on January 22, 2021. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II.   ALJ Sutker's August 28, 2020 Decision.

In order to receive DIB or SSI under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

2

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combination of
impairments; (3) whether the impairment meets or equals the severity of the
specified impairments in the Listing of Impairments; (4) based on a
"residual functional capacity" assessment, whether the claimant can
perform any of his or her past relevant work despite the impairment; and
(5) whether there are significant numbers of jobs in the national economy
that the claimant can perform given the claimant's residual functional
capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R.
§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability
within the meaning of the Act, and bears the burden of proving his or her case at [S]teps
[O]ne through [F]our of the sequential five-step framework established in the SSA
regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation
marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to
show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150
(alterations in original) (internal quotation marks omitted).

At Step One, ALJ Sutker found Plaintiff had not engaged in substantial gainful
activity since January 21, 2019, the alleged onset date. At Step Two, she concluded
Plaintiff had the following severe impairments: disc disease of the lumbar spine post-
surgery, obesity, anxiety disorder, and major depressive disorder.

At Step Three, ALJ Sutker found Plaintiff did not have an impairment or
combination of impairments that met or medically equaled the severity of one of the
Listings. The ALJ found that Plaintiff's spinal impairments did not meet or equal the
severity described at Listing 1.02 of Appendix 1 "even when the effects of obesity are
also considered" because Plaintiff "has maintained normal motor, sensory[,] and reflex
function with negative straight-leg raise testing[,]" as documented by a treating physician
during a January 2020 examination. (AR 20.) The ALJ further noted that Plaintiff's
physician observed no evidence of nerve root impingement.

3

With regard to Plaintiff's mental health conditions, the ALJ found that Plaintiff had "no more than mild" limitations in understanding, remembering, or applying information; and "no more than moderate" limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* The ALJ concluded that the "'paragraph B'" criteria were not satisfied because Plaintiff does not have at least two marked limitations or one extreme limitation. *Id.* She also found that the "'paragraph C'" criteria were not present because Plaintiff "is not reliant upon mental health support[] to maintain merely marginal functioning." *Id.* at 21.

At Step Four, ALJ Sutker determined Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can stand and walk 2 hours of an 8-hour day and sit for about 6 hours of an 8-hour day with normal breaks. He cannot climb ladders[,] ropes[,] or scaffolds. He can rarely crawl (no more than 1-2 times per day). He can stoop on a less than occasional basis (up to a total of 1 hour per day). He can occasionally perform other postural activities. He needs to avoid more than moderate noise levels and all exposure to extreme cold. He is limited to uncomplicated tasks (defined as tasks that can be learned in less than 30 days). He can maintain concentration/persistence/pace for 2-hour blocks throughout the workday. He can perform tasks in an environment without strictly timed tasks or belt work (such as a factory assembly line). He can engage in incidental contact with the public (where dealing [with] the public is not a part of his job duties[,] as for example brief encounters when passing someone in a hallway). He needs an environment where tasks are generally performed in a solitary manner, but he is able to perform tandem tasks up to 10% of the workday. Within such a setting, he is able to collaborate with co-workers and supervisors on routine matters and . . . adapt to occasional task changes.

*Id.*

In light of Plaintiff's RFC, the ALJ concluded Plaintiff could not perform his past relevant work as a security guard, truck driver, landscape laborer, maintenance supervisor, ski rental clerk, cashier, or plate molder. The ALJ noted that Plaintiff was twenty-nine years old, making him "a younger individual" on the alleged disability onset date, and that Plaintiff had "at least a high school education[.]" *Id.* at 24.

4

Considering Plaintiff's age, education, work experience, and RFC, ALJ Sutker determined at Step Five that jobs exist in significant numbers in the national economy which Plaintiff could perform, including office helper, marker, garment sorter, document preparer, lens inserter, and leaf tier. The ALJ did not credit the claim that Plaintiff is limited to jobs with a reasoning code of 1 based on a reviewing state agency psychologist's opinion that Plaintiff is "limited to 1-2 steps instructions" because the cited language was vague and "th[at] degree of impairment . . . is inconsistent with [Plaintiff's] work history, which has included skilled work[,]" in addition to being inconsistent with Plaintiff's "ongoing daily activities, which include gardening, using a weed whacker, fishing with his children, shopping, managing his own medical care[,] and using a computer." (AR 25.) The ALJ reasoned that, in any event, the jobs of lens inserter and leaf tier "both have reasoning levels of '1' per [VE] testimony and these jobs by themselves establish a significant number of jobs in the [n]ational economy." *Id.* As a result, the ALJ concluded Plaintiff was not disabled.

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an

independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

The court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case[.]" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted) (first alteration in original). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## B.     Whether the ALJ Erred in Not Considering Evidence of Plaintiff's Stroke After His Hearing but Before the ALJ's Decision.

Plaintiff asserts that on August 11, 2020, after his hearing but before ALJ Sutker issued her decision, he "suffered an ischemic stroke." (Doc. 15-1 at 1.) Plaintiff "submitted the first readily available records[,]" his discharge instructions from the hospital, to ALJ Sutker on August 17, 2020. *Id.*; (AR 84-89.) The ALJ issued her unfavorable decision on August 28, 2020, which did not mention this new medical evidence or its impact on Plaintiff's ability to work.

"It is the rule in our circuit that the . . . ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks and alterations omitted); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (observing that an ALJ has an obligation to develop the record because "of the non-adversarial nature of . . . benefits proceedings"); *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (noting that "the ALJ, unlike a judge in a trial, must . . . affirmatively develop the

6

record"). "This duty exists even when the claimant is represented by counsel[.]" *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

An ALJ also has a duty to resolve "gaps in the administrative record[.]" *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir. 1980) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). "However, 'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" *Guillen v. Berryhill*, 697 Fed. App'x. 107, 108 (2d Cir. 2017) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). "An ALJ's failure to develop the record warrants remand." *Id.* (citation omitted).

While the ALJ did not affirmatively state that she refused to admit evidence of Plaintiff's stroke, her decision includes no reference to it. Pursuant to 20 C.F.R. § 404.935(a), a social security claimant "must make every effort to ensure that the [ALJ] receives all of the evidence and must . . . submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing." *Id.* After the hearing, however, if an ALJ "has not yet issued a decision[,]" he or she will accept a claimant's evidence if an "unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control prevented [him or her] from . . . submitting the evidence earlier." *Id.* § 404.935(b)(3); *see also Jones v. Berryhill*, 2020 WL 907119, at *8 (S.D.N.Y. Jan. 27, 2020) (observing that "if the claimant informs the SSA about evidence after the hearing but before a decision is issued," the ALJ will accept the evidence if an exception applies). In addition, "[t]he five-day rule [requiring a claimant to submit written evidence before his or her hearing] does not eliminate the ALJ's duty to develop the record[.]" *Shackleford v. Saul*, 2020 WL 3888037, at *6 (S.D.N.Y. July 10, 2020) (collecting cases stating that despite the five-day rule, an ALJ must nevertheless fulfill his or her affirmative duty to develop the record).

In this case, the Commissioner does not contest that Plaintiff's stroke occurred before the ALJ issued her decision or that the event was unexpected and beyond Plaintiff's control. In fact, the Commissioner tacitly concedes that this evidence should have been admitted. *See* (Doc. 14 at 20-21) (asserting that "even if the ALJ should have

admitted the evidence [of Plaintiff's stroke] under 20 C.F.R. 404.935(b)," Plaintiff's requested relief should not be granted).

Under § 404.935(b)(3), the ALJ should have admitted evidence of Plaintiff's stroke and considered it in her disability determination. Her failure to do so was not harmless as the evidence was potentially material to the issue of whether Plaintiff could work and, if so, what kind of work he could perform. *See Anthony A. v. Comm'r of Soc. Sec.*, 2022 WL 806890, at *7-*8 (N.D.N.Y. Mar. 17, 2022) (holding that ALJ's failure to consider a medical source statement or otherwise address whether it should be considered under § 404.935(b)(3) was not harmless error); *Melissa P. v. Comm'r of Soc. Sec.*, 2022 WL 669325, at *9 (N.D.N.Y. Mar. 7, 2022) ("An ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error.") (internal quotation marks omitted).

Following the ALJ's unfavorable decision, Plaintiff submitted to the Appeals Council additional medical records from Southwestern Vermont Medical Center, (AR at 32-76), a consultation note from Cheshire Medical Center, *id.* at 78-82, and his hospital discharge instructions, *id.* at 84-89. Plaintiff's discharge documentation directs him to "[s]ee [n]eurovascular specialists" who are "likely to recommend additional imaging of the left carotid a[r]terial system[.]" *Id.* at 88. The records from Southwestern Vermont Medical Center reveal that Plaintiff's "imaging was concerning, not only the brain MRI which suggested a series of small infarct event, but also with his neck MRA which suggested significant abnormalities of his left carotid system[.]" *Id.* at 42. Without an accompanying medical opinion, the records also included the results of a CT scan, an MRI/MR of Plaintiff's brain, and an MRI/MRA of Plaintiff's head and neck. *Id.* at 44-52. "[N]o medical provider . . . appears to have interpreted [Plaintiff's] test results. Certainly neither the ALJ[, the BIA,] nor this [c]ourt is competent to interpret and apply these results, which consist of raw, technical medical data." *Deso v. Astrue*, 2011 WL 5967181, at *7 (D. Vt. Nov. 29, 2011) (citation omitted).

A remand for further proceedings is thus required. *See id.* (determining that the record was inadequately developed and remanding case where "after the hearing and

8

prior to the ALJ issuing a decision" the ALJ was notified about additional relevant evidence which "should have prompted the ALJ to . . . seek that evidence[.]") On remand, additional evidence regarding Plaintiff's stroke that was generated after the issuance of the ALJ's decision may be properly considered. *See* 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]").

Because a remand to consider evidence regarding Plaintiff's stroke is required, the court need not and does not address Plaintiff's remaining arguments for reversal. *See, e.g.*, *Brauer v. Comm'r of Soc. Sec.*, 2019 WL 3074060, at \*2 (W.D.N.Y. July 15, 2019) ("[B]ecause the [c]ourt concludes that remand is required on one of the grounds that [Plaintiff] raises, it need not address his remaining arguments.").

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse the decision of the Commissioner (Doc. 13) is GRANTED, the Commissioner's motion to affirm (Doc. 14) is DENIED, and the case is REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of June, 2022.

Christina Reiss, District Judge
United States District Court